SMITH & MYERS LLP
THOMAS MYERS (SBN 120674)
(E-Mail: myers@smithmyerslaw.com)
333 South Hope Street, 35th Floor
Los Angeles, California 90071
Telephone: (213) 613-2380; Facsimile: (213) 613-2395

Nathan J. McGrath, Esq. (Pa. Bar No. 308845)
    (*pro hac vice to be applied for*)
Milton L. Chappell, Esq. (D.C. Bar No. 936153)
    (*pro hac vice to be applied for*)
(E-mails: njm@nrtw.org; mlc@nrtw.org)
c/o National Right to Work Legal
DEFENSE FOUNDATION, INC.
8001 Braddock Road, Suite 600
Springfield, Virginia 22151
Telephone: (703) 321-8510; Facsimile: (703) 321-9319

Attorneys for Plaintiffs and the Class They Seek to Represent

FILED
CLERK, U.S. DISTRICT COURT

OCT - 9 2014

CENTRAL DISTRICT OF CALIFORNIA
BY

SMITH & MYERS LLP
333 South Hope Street, 35th Floor
Los Angeles, California 90071
Tel: (213) 613-2380 Fax: (213) 613-2395

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

**CV14-7855 FFM**

DOUGLAS KENNEDY, EDUARDO
BERUMEN, GRISELDA MORAN, and
MAGI SAHAGIAN, for Themselves and the
Class They Seek to Represent,

                Plaintiffs,

v.

SERVICE EMPLOYEES INTERNATIONAL
UNION, LOCAL 99; LOS ANGELES
UNIFIED SCHOOL DISTRICT; and
MEGAN K. REILLY, Chief Financial Officer
of the Los Angeles Unified School District,

                Defendants.

) Case No:
)
) **COMPLAINT - CLASS**
) **ACTION**
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**AND NOW** come Plaintiffs Douglas Kennedy, Eduardo Berumen, Griselda Moran, and Magi Sahagian, by and through their undersigned attorneys, and bring this class action against Defendants Service Employees International Union, Local 99 ("Local 99" or "the union"), Los Angeles Unified School District (the "District"), and Megan K. Reilly, Chief Financial Officer of the District, who is sued only in her official capacity, and allege as follows:

## I. **JURISDICTION**

1. This action arises under the Constitution and laws of the United States, specifically the First and Fourteenth Amendments to the United States Constitution. The jurisdiction of this Court is invoked under 28 U.S.C. §1331 (federal question).

2. This action also arises under the Federal Civil Rights Act of 1871, 42 U.S.C. §1983, to redress the deprivation, under color of state law, of the rights, privileges, and immunities secured to Plaintiffs and the class members they seek to represent by the Constitution of the United States, specifically the First and Fourteenth Amendments thereto. The jurisdiction of this Court is invoked under 28 U.S.C. §1343, pursuant to which this Court may grant: (a) injunctive relief against any further collection or acceptance of fees in whole or in part; (b) declaratory relief by declaring Cal. Gov. Code §3540.1(i)(1) and Article VIII, Paragraph 5.0 unconstitutional and injunctive relief by enjoining the enforcement thereof by Defendants against Plaintiffs and class members; (c) nominal damages for the

SMITH & MYERS LLP
333 South Hope Street, 35th Floor
Los Angeles, California 90071
Tel: (213) 613-2380 Fax: (213) 613-2395

violation of Plaintiffs' and class members' First and Fourteenth Amendment rights; (d) compensatory damages and/or partial restitution in the amount of the political, ideological, and other non-chargeable fees unconstitutionally seized from Plaintiffs' and class members' wages; and (e) reasonable attorneys' fees and costs, pursuant to 42 U.S.C. §1988.

3. This is also a case of actual controversy where Plaintiffs seek a declaration by this Court of their and class members' rights under the Constitution of the United States. Under 28 U.S.C. §§2201 and 2202, this Court may declare Plaintiffs' and the class members' rights and grant further necessary and proper relief based thereon, including preliminary and permanent injunctive relief, pursuant to Rule 65 of the Federal Rules of Civil Procedure.

## II.   SUMMARY OF THE CASE

4. This is a civil rights class action pursuant to 42 U.S.C. §1983, seeking declaratory, injunctive, and monetary relief brought by the Plaintiffs on behalf of themselves and the class members they seek to represent against Local 99, their exclusive bargaining representative, and the District, their public employer. Defendants are state actors acting under the color of state law—specifically, the Educational Employment Relations Act ("EERA"), California Government Code §3540 *et seq.*, and California Government Code §3504.1(i)(1), which authorizes a maintenance of membership requirement as within the scope of representation. Under the color of state law and a collective bargaining agreement and

SMITH & MYERS LLP
333 South Hope Street, 35th Floor
Los Angeles, California 90071
Tel: (213) 613-2380 Fax: (213) 613-2395

memorandum of understanding between Local 99 and the District, Defendants have been depriving and continue to deprive Plaintiffs and other public employees of their rights, privileges, and immunities against compelled speech and compelled association under the First and Fourteenth Amendments of the United States Constitution. Local 99 has deprived, and threatens to continue to deprive, Plaintiffs and the class members of these and related constitutional rights.

Specifically, Plaintiffs challenge Local 99's refusal to accept their resignations and/or requests to pay only the reduced agency fee amount that does not include political, ideological, and other non-chargeable expenses, and Defendants' continued collection of non-chargeable dues and fees from Plaintiffs, despite their resignations from Local 99 membership and/or their objections to paying for Local 99's political, ideological, and non-chargeable activities.

Pursuant to forced-unionism clauses authorized by the EERA and contained in Defendants' collective bargaining agreements and memoranda of understanding (collective bargaining agreement dated 2011–2014 ("CBA") and, by incorporation of the CBA's provision, the memorandum of understanding dated 2014–2017 ("MOU"), collectively referred to as "Agreements"), Plaintiffs and similarly situated public employees are required, as a condition of their employment, to either join Local 99 and pay full union dues or have dues equivalent agency fees seized from their wages as nonmembers. Local 99 uses union dues and/or fees collected from its members and nonmember agency fee payors to fund political,

SMITH & MYERS LLP
333 South Hope Street, 35th Floor.
Los Angeles, California 90071
Tel: (213) 613-2380 Fax: (213) 613-2395

SMITH & MYERS LLP
333 South Hope Street, 35th Floor
Los Angeles, California 90071
Tel: (213) 613-2380 Fax: (213) 613-2395

ideological, and other non-chargeable activities, to which Plaintiffs object and wish not to have any of their money used for such activities. Local 99 has either refused to accept Plaintiffs' and class members' resignation requests or has constructively accepted their resignations from union membership but denied them their right to object and pay a reduced agency fee amount. Local 99 has acted in concert with the District to require said employees to continue paying an amount equal to full union dues despite the employees' resignations and/or objections to paying full dues. Local 99 claims the right to this conduct is based upon Article VIII, Paragraph 5.0 of the Agreements, notwithstanding the Plaintiffs' and other employees' objections to paying for Local 99's political, ideological, and other non-chargeable expenditures.

5. Alternatively, assuming *arguendo* that the EERA's maintenance of membership authorization, Cal. Gov. Code §3540.1(i)(1) and Article VIII, Paragraph 5.0 of the Agreements are deemed to be legal and, as such, Defendants can legally compel Plaintiffs and class members to maintain their membership in Local 99, then Plaintiffs and class members are compelled union "members" who object to any portion of their union dues or fees funding Local 99's political, ideological, and other non-chargeable activities. Those compelled "members" are entitled to their procedural and substantive First and Fourteenth Amendment rights pursuant to the United States Supreme Court's decisions in *Abood v. Detroit Board of Education*, 431 U.S. 209, 235–36 (1977), and *Chicago Teachers Union, Local*

*No. 1 v. Hudson*, 475 U.S. 292 (1986), and cannot be required as a condition of public employment to pay for the union's political, ideological, and other non-chargeable expenditures.

## III. VENUE

6.  Venue is proper in this Court pursuant to 28 U.S.C. §1391 because each Defendant either resides and/or maintains an office and transacts significant amounts of business in this judicial district. Additionally, a substantial part of the events giving rise to Plaintiffs' claims occurred in this judicial district.

## V. PARTIES

7.  **Plaintiffs**.

a. Plaintiff Douglas Kennedy is, and has been at all times relevant hereto, employed as a building and grounds worker by the District located in Los Angeles, California. He is paid for his services by the District and is a "public school employee" or "employee" within the meaning of California Government Code §3540.1(j) at all relevant times hereto. Kennedy is a member of a bargaining unit represented by Local 99. He resigned his Local 99 membership and objected to paying for Local 99's political, ideological, and other non-chargeable activities in writing via letter, but Local 99 denied said requests in a letter dated September 10, 2014.

b. Plaintiffs Eduardo Berumen and Griselda Moran are, and have been at all times relevant hereto, employed as bus drivers by the District located in Los

SMITH & MYERS LLP
333 South Hope Street, 35th Floor
Los Angeles, California 90071
Tel: (213) 613-2380 Fax: (213) 613-2395

Angeles, California. They are paid for their bus driving services by the District and are "public school employees" or "employees" within the meaning of California Government Code §3540.1(j) at all relevant times hereto. Berumen and Moran are members of a bargaining unit represented by Local 99. Both resigned their Local 99 membership and objected to paying for Local 99's political, ideological, and other non-chargeable activities in writing via letter, but Local 99 denied their requests in letters dated October 12, 2012 and November 20, 2013, respectively.

c.  Plaintiff Magi Sahagian is, and has been at all times relevant hereto, employed as a cafeteria worker by the District located in Los Angeles, California. She is paid for her cafeteria services by the District and is "public school employee" or "employee" within the meaning of California Government Code §3540.1(j) at all relevant times hereto. She is a member of a bargaining unit represented by Local 99. She resigned her Local 99 membership and objected to paying for Local 99's political, ideological, and other non-chargeable activities in writing via letter, but Local 99 denied her request in a letter dated December 20, 2013.

8.  **Defendants**.

a.  Defendant Service Employees International Union, Local 99, is an "employee organization" pursuant to California Government Code §3540.1(d). It maintains its headquarters office at 2724 West 8th Street, Los Angeles, California, and is the "exclusive representative" as defined by California Government Code

SMITH & MYERS LLP
333 South Hope Street, 35th Floor
Los Angeles, California 90071
Tel: (213) 613-2380 Fax: (213) 613-2395

§3540.1(e) and as recognized by the District under said law for collective bargaining purposes for all Plaintiffs and other similarly situated District employees. Local 99 conducts its business and operations within the State of California and within the Central District of California. Upon information and belief, Local 99 is affiliated with and pays monies to, *inter alia*, the Service Employees International Union ("SEIU").

b. Defendant Los Angeles Unified School District is a "public school employer" or "employer" pursuant to and as defined by California Government Code §3540.1(k). It has offices at 333 South Beaudry Avenue, Los Angeles, California. As such, the District is authorized to enter into agreements governing the terms and conditions of Plaintiffs' and class members' employment, including union security agreements, with labor organizations certified as the employees' exclusive representative. The District pays the wages of its employees, including the Plaintiffs and the class members whom they seek to represent, withholds money from these employees' wages, and pays a portion of those wages to Local 99 with no restrictions on Local 99's use thereof.

c. Defendant Megan K. Reilly is the District's Chief Financial Officer, and has authority over the department of Accounting and Disbursements Division, which includes payroll services. As such, on information and belief, she is charged with the responsibility of overseeing the issuance of wages to the District's employees, including Plaintiffs and class members, and processing all deductions

SMITH & MYERS LLP
333 South Hope Street, 35th Floor
Los Angeles, California 90071
Tel: (213) 613-2380 Fax: (213) 613-2395

therefrom, including union dues and agency fees pursuant to provisions of the CBA. She is sued only in her official capacity.

## VI.   CLASS ACTION ALLEGATIONS

9. Plaintiffs bring this case as a class action pursuant to Federal Rules of Civil Procedure, Rules 23(b)(1)(A) and (b)(2) and, alternatively, 23(b)(3), for themselves and for all other similarly situated District employees. The class that Plaintiffs seek to represent consists of all former, current, and future District employees who are, have been, or will be represented exclusively for purposes of collective bargaining by Local 99, and who have had their attempt(s) to resign their union membership and/or object to paying the non-chargeable portion of Local 99's dues or fees denied by Local 99.

10.   Upon information and belief, the number of individuals in the class is approximately 200 individuals and is therefore so numerous that joinder of all class members is impractical.

11.   There are questions of law and fact common to all class members, including Plaintiffs. These questions include: (1) whether Local 99 and/or the District violate Plaintiffs' and class members' constitutional rights of due process, free speech, and association under the First and Fourteenth Amendments when it/they: (a) rely on California Government Code §3540.1(i)(1)'s authorization of maintenance of membership and enforce said maintenance of membership provision against Plaintiffs and class members, and whether said code provision is

SMITH & MYERS LLP
333 South Hope Street, 35th Floor
Los Angeles, California 90071
Tel: (213) 613-2380 Fax: (213) 613-2395

even constitutional; (b) enforce Article VII, Paragraph 5.0 of the Agreements against Plaintiffs and the class members; (c) deny Plaintiffs' and class members' resignations and/or requests to be reduced agency fee payors and ignore and refuse to process Plaintiffs' and class members' objections to paying for Local 99's political, ideological, and other non-chargeable activities based on the Agreements' so-called "Maintenance of Membership" provision; and (d) fail to reduce Plaintiffs' and/or class members' payments to Local 99 so that they are not paying for political and non-representational activities; or (2) alternatively, assuming arguendo that Defendants can compel Plaintiffs' and class members' to maintain their membership, whether Defendants violate Plaintiffs' and class members' procedural and substantive First and Fourteenth Amendment rights when Local 99 fails to provide proper *Hudson* notice and disclosure to said compelled "members."

12. Plaintiffs' claims are typical of those of the class members who are subject to the same deprivations of their rights by the EERA's authorization of maintenance of membership requirements; Local 99's rejection of Plaintiffs' and class members' resignations and/or objections to paying for Local 99's political, ideological, and other non-chargeable activities; and Local 99, the District, and Reilly's processing and acceptance of union dues or agency fees in spite of said resignations and objections. Local 99 and/or the District owe Plaintiffs and all other class members an identical duty with regards to these claims.

///

SMITH & MYERS LLP
333 South Hope Street, 35th Floor
Los Angeles, California 90071
Tel: (213) 613-2380 Fax: (213) 613-2395

13.     Plaintiffs can adequately represent the interests of the class members. They have no conflict with class members who wish to be nonmembers and agency fee objectors of Local 99, respectively, and who are nevertheless forced to pay full union dues or agency fees to Local 99 as a condition of their employment.

14.     California Government Code §3540.1(i)(1) and the Agreements' "union security"/"organizational security"/"Maintenance of Membership" provisions that Local 99 relies upon to deny Plaintiffs' and class members' requests to resign and/or pay only the reduced agency fee amount apply equally to Plaintiffs and all class members. The prosecution of separate actions by those individual class members would create a risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for Local 99.

15.     Defendants have acted, and continue to act, to deprive Plaintiffs and each class member of his or her constitutional and civil rights on grounds generally applicable to all, thereby making certain declaratory, injunctive, and other equitable relief appropriate for all Plaintiffs and class members.

16.     Alternatively, the questions of law or fact raised in this Complaint concerning the constitutionality of California Government Code §3540.1(i)(1) and the Agreements' "union security"/"organizational security"/"Maintenance of Membership" provisions, and the constitutional and civil rights of those employees attempting to resign and/or object to paying for any of Local 99's political, ideological or other non-chargeable activities are common to Plaintiffs and the

SMITH & MYERS LLP
333 South Hope Street, 35th Floor
Los Angeles, California 90071
Tel: (213) 613-2380 Fax: (213) 613-2395

class members and predominate over any questions affecting an individual class member.

17.     A class action is superior to other available methods for the fair and efficient adjudication of the controversies, in that Plaintiffs and the class members are deprived of the same constitutional and civil rights by California Government Code §3540.1(i)(1) and the Agreements' "union security"/"organizational security"/"Maintenance of Membership" provisions, and Defendants' actions, differing only in immaterial aspects of their factual situations. The limited amount of money at stake for each individual Plaintiff and class member makes it burdensome for them to maintain individual, separate actions.

18.     Defendants' illegal actions against all Plaintiffs and class members were taken pursuant to the same statute and the same provisions of the Agreements and constitute a concerted scheme that results in the violation of Plaintiffs' and class members' rights.

19.     Plaintiffs are currently unaware of any similar litigation concerning the controversy set forth in this Complaint either filed by the Plaintiffs and/or class members or filed against Plaintiffs and/or class members.

20.     The chosen forum, the United States District Court for the Central District of California, is the most desirable forum for this action as the action raises federal questions, over which a federal district court has proper jurisdiction. Furthermore, all actions giving rise to the controversy set forth herein arise in full

SMITH & MYERS LLP
333 South Hope Street, 35th Floor
Los Angeles, California 90071
Tel: (213) 613-2380 Fax: (213) 613-2395

or in large part in the Central District of California, and the Defendants in this action reside and/or maintain offices and conduct significant business herein. Not only is jurisdiction proper, but litigation of the claims herein in the chosen forum is, on a practical level, most convenient to all parties named in this action.

21.    Plaintiffs do not anticipate or foresee any difficulties in managing this action as a class action. Plaintiffs have sought and retained counsel experienced in the particular issues and areas of law raised in this action and counsel experienced in litigating and managing class actions of this nature. Furthermore, Plaintiffs' counsel are provided to them and the class members *pro bono* by a national, charitable organization that provides free legal aid to employees and that has provided support to many similar actions maintained as class actions and requiring similar resources as is anticipated will be required for this action. Plaintiffs' counsel are experienced in representing nonmember employees in federal civil rights litigation, having litigated many of the leading constitutional and statutory cases in this area of law, including class actions involving union membership and fee issues identical or similar to those raised in this action and pertaining to the class. These attorneys are best able to represent the interests of the class members and will fairly, zealously, and adequately do so.

22.    At this time, Plaintiffs do not anticipate the need for any notice to class members if this action is certified pursuant to Rules 23(b)(1) or (b)(2) of the Federal Rules of Civil Procedure. If maintained as a class action under Rule

SMITH & MYERS LLP
333 South Hope Street, 35th Floor
Los Angeles, California 90071
Tel: (213) 613-2380 Fax: (213) 613-2395

23(b)(3) of the Federal Rules of Civil Procedure, Plaintiffs anticipate that notice would be sent to class members via first-class, U.S. mail, sent to all class members' last known mailing address on file with the District and/or Local 99.

## VII.  **CLAIM FOR RELIEF**

23.     Plaintiffs are "public school employees" or "employees" as defined by California Government Code §3540.1(j).

24.     The District is a "public school employer" or "employer" as defined by California Government Code §3540.1(j), and employs each Plaintiff and pays his or her wages.

25.     Local 99 is an "employee organization" as defined by California Government Code §3540.1(d). The union is the "exclusive representative" for purposes of collective bargaining of Plaintiffs and the class members pursuant to California Government Code §3540.1(e), and it is recognized as such by the District.

26.     California Government Code §3540.1(i)(1) authorizes a maintenance of membership requirement as a form of organizational security allowed as a subject within the scope of representation. It authorizes that an employee who joins an employee organization, "as a condition of continued employment," can be required to "maintain his or her membership in good standing for the duration of the written agreement."

///

SMITH & MYERS LLP
333 South Hope Street, 35th Floor
Los Angeles, California 90071
Tel: (213) 613-2380 Fax: (213) 613-2395

27.   Local 99 has and will rely on California Government Code §3540.1(i)(1) to deny, in whole or in part, Plaintiffs' and class members' requests to resign their union memberships and become agency fee payors and pay the reduced agency fee amount.

28.   Acting in concert and under color of state law—to wit, the EERA, California Government Code §3540 *et seq.*—the District and Local 99 have entered into a series of collective bargaining agreements and memoranda of understanding that control the terms and conditions of Plaintiffs' (and others') employment.

29.   Defendants' entered into a collective bargaining agreement lasting three years, dated 2011-2014 and then a memorandum of understanding, which incorporated the terms of the CBA dated 2011–2014, except where explicitly stated, and said memorandum, which is the current agreement under which Defendants are operating, is dated 2014–2017. Which means that the window period for resigning and/or objecting is not until between March 31 and April 30, 2017, and the window period before that relating to the CBA was between March 31 and April 30, 2014.

30.   Based on the both the CBA and MOU, the time for a bargaining unit member to resign and/or object is only a 30 day window period every three years.

///

///

SMITH & MYERS LLP
333 South Hope Street, 35th Floor
Los Angeles, California 90071
Tel: (213) 613-2380 Fax: (213) 613-2395

SMITH & MYERS LLP
333 South Hope Street, 35th Floor
Los Angeles, California 90071
Tel: (213) 613-2380 Fax: (213) 613-2395

31.     The Agreements have a "Union Security and Dues Deduction" article. Relevant portions of the Agreements are attached hereto as "Exhibit A," and incorporated herein.

32.     The Agreements have no restriction on when and how a union member may resign his or her union membership.

33.     The Agreements state that a bargaining unit employee must "be a member in good standing of the Union" or "satisfy the agency fee financial obligations" set forth in the Agreements unless the bargaining unit employee qualifies for a religious exemption.

34.     Nevertheless, the Agreements contain a provision that limits bargaining unit employees' ability to revoke their dues deduction authorizations to a specified window period. According to the Agreements, the window period is "during the thirty (30) day period commencing ninety (90) days before the expiration of the Agreement and/or upon expiration of the Agreement," which, for time periods relevant to this matter, did/does not occur until March 31 and April 30, 2014, and March 31 and April 30, 2017, respectively.

35.     According to the Agreements, the District is to "process a mandatory agency fee payroll deduction in the appropriate amount, and forward that amount to the Union" unless a bargaining unit employee "has (a) voluntarily submitted to the District an effective dues deduction request, or (b) individually made direct financial arrangements satisfactory to the Union as evidenced by notice of same by

the Union to the District, or (c) qualifies for exemption based upon religious grounds."

36.   The agency fee amount, according to the Agreements, is "not to exceed the normal periodic membership dues, initiation fee and general assessments applicable to Union members."

37.   Pursuant to the Agreements, only a reduced agency fee amount should be charged to objecting nonmembers (objecting agency fee payors), who have resigned within the window period which occurs approximately once every three years.

38.   On information and belief, the District deducts a reduced agency fee amount (only the chargeable agency fee portion) from those bargaining unit employees that Local 99 recognizes as objecting agency fee payors and has so informed the District. The District transmits said deducted reduced agency fee monies to Local 99.

39.   On information and belief, when Local 99 recognizes an employee as an objecting agency fee payor, it notifies the District to lower said employee's agency fee deduction to the reduced agency fee amount.

40.   On information and belief, the District deducts full union dues or full agency fees from all bargaining unit employees except for those for which Local 99 has informed the District to deduct reduced agency fees.

///

SMITH & MYERS LLP
333 South Hope Street, 35th Floor
Los Angeles, California 90071
Tel: (213) 613-2380 Fax: (213) 613-2395

SMITH & MYERS LLP
333 South Hope Street, 35th Floor
Los Angeles, California 90071
Tel: (213) 613-2380 Fax: (213) 613-2395

41.     On varying dates falling outside of the Agreements' window periods, each Plaintiff sent a letter to Local 99 in which he or she resigned his or her union membership and objected to paying anything more than the reduced agency fee amount, which does not include Local 99's political, ideological, and non-chargeable expenditures.

42.     In response to said resignation and objection letters, each Plaintiff received a letter from Local 99 either denying or only constructively accepting his or her resignation from union membership, but in either case explicitly denying his or her request not to pay for Local 99's political, ideological, and other non-chargeable expenses. Said denial letters are attached hereto as "Exhibit B," and incorporated herein.

43.     Local 99 either denied Plaintiffs' union resignation or constructively accepted them by stating in its letter to Plaintiffs that it understands that he or she does "not wish to be a member of Local 99" and, as such, it will "not enforce any rules or duties of membership" against him or her except for the "financial obligation" to pay full union dues.

44.     As it stands today, each Plaintiff continues to have an amount of money equal to full union dues/agency fees deducted from his or her wages because Local 99 refuses to treat them as complete and total nonmembers and/or honor their objections to paying Local 99's political, ideological, and other non-chargeable expenses.

SMITH & MYERS LLP
333 South Hope Street, 35th Floor
Los Angeles, California 90071
Tel: (213) 613-2380 Fax: (213) 613-2395

45.     Since the time Plaintiffs sent their resignation and objection letters and continuing to date, Local 99 has not notified the District to reduce the amount deducted from Plaintiffs' wages to the reduced agency fee amount and the District has continued to deduct from the wages of each Plaintiff an amount of money equal to full union dues/agency fees, which includes money used, at least in part, for political, ideological, and other non-chargeable activities by Local 99 and its affiliates. The District transfers this money, without restriction, to Local 99, which accepts it.

## VIII.   COUNT I

*(Defendants' Violation of Plaintiffs' and Class Members' 42 U.S.C. §1983 and Constitutional Rights by EERA's Unconstitutional Authorization of Maintenance of Membership Requirement)*

46.     Plaintiffs incorporate and re-allege by reference all facts contained in the foregoing paragraphs of this Complaint, as if fully set forth herein.

47.     The First Amendment to the Constitution of the United States protects the associational and free speech rights of United States citizens, and the Fourteenth Amendment to the Constitution of the United States incorporates the protections of the First Amendment against the States.

48.     An employee in a bargaining unit represented by a union cannot be forced to join the union or to maintain his or her membership in the union as a condition of employment.

///

49.     California Government Code §3540.1(i)(1) permits public school employers and employees' representatives to agree to an organizational security provision that requires, as a condition of employment, an employee "to maintain his or her [union] membership in good standing for the duration of [a] written agreement."

50.     California Government Code §3540.1(i)(1) violates the First Amendment's right of non-association, both on its face and as applied, by illegally restricting an employee's constitutional right to resign his or her union membership at will.

51.     The government has no compelling state interest justifying a policy that denies nonmembers the right—except during a limited, narrow window period—to change their minds and quit their membership in a private organization, especially when they no longer support the political, ideological, or non-chargeable activities of that organization.

52.     Because   California   Government   Code   §3540.1(i)(1)   is unconstitutional it should be declared null and void.

53.     California Government Code §3540.1(i)(1)'s authorization of illegal "maintenance of membership" provisions allows Local 99 and the District to require Plaintiffs and class members to remain unwilling and compelled Local 99 "members," forced to pay full union dues against their will. This statutory provision violates the limited constitutional authorization for forced-unionism

SMITH & MYERS LLP
333 South Hope Street, 35th Floor
Los Angeles, California 90071
Tel: (213) 613-2380 Fax: (213) 613-2395

1  schemes under the First and Fourteenth Amendments to the United States

2  Constitution, which are limited to the payment of the costs of collective bargaining,

3  contract administration, and grievance adjustment.

4

5      54.    As a direct result of Local 99 and the District's actual and threatened

6  actions taken pursuant to California Government Code §3540.1(i)(1), Plaintiffs and

7  class members:

8

9          a.     have been prevented from exercising their rights and privileges

10  as citizens of the United States to resign their union membership and/or to stop

11  financially supporting political, ideological, and other non-chargeable activities of

12  a private organization with which they no longer wish to associate or belong;

13

14          b.     have been deprived of their civil rights guaranteed to them

15  under the statutes of the United States;

16

17          c.     have suffered monetary damages in the amount of dues or fees

18  collected from them and spent on political, ideological, and other non-chargeable

19  activities to which they object;

20

21          d.     are in imminent danger of being deprived of their rights

22  guaranteed to them under the Constitution and statutes of the United States;

23

24          e.     are in imminent danger of suffering monetary, equitable, and

25  other damages; and

26  ///

27  ///

28

SMITH & MYERS LLP
333 South Hope Street, 35th Floor
Los Angeles, California 90071
Tel: (213) 613-2380 Fax: (213) 613-2395

SMITH & MYERS LLP
333 South Hope Street, 35th Floor
Los Angeles, California 90071
Tel: (213) 613-2380 Fax: (213) 613-2395

f.      are in imminent danger of suffering irreparable harm, damage, and injury that is inherent in the violation of First and Fourteenth Amendment rights, for which there is no adequate remedy at law.

55.    If not enjoined by this Court, Defendants and/or their agents will continue to effect the aforementioned deprivations and abridgments of Plaintiffs' and class members' constitutional rights, thereby causing irreparable harm, damage, and injury for which there is no adequate remedy at law.

## IX.   COUNT II

*(Defendants' Violation of Plaintiffs' and Class Members' 42 U.S.C. §1983 and Constitutional Rights by Illegal Provisions of the Agreements)*

56.    Plaintiffs incorporate and re-allege by reference all facts contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

57.    The First Amendment to the Constitution of the United States protects that associational and free speech rights of United States citizens, and the Fourteenth Amendment to the Constitution of the United States incorporates the protections of the First Amendment against the States.

58.    A nonmember employee cannot be forced to pay for a labor union's political, ideological, or other non-chargeable activities as a condition of his or her employment. *Abood*, 431 U.S. at 235–36; *see also Hudson*, 475 U.S. at 301–02.

59.    Article VIII, Paragraph 5.0, of the Agreements, negotiated and agreed to by Local 99 and the District, restricts a bargaining unit employee's ability to resign from a union or revoke his or her dues deduction authorization. It is

therefore unconstitutional on its face and/or as applied and should be declared null and void because it violates the nonmember's ability to freely exercise his or her First and Fourteenth Amendment rights. Article VIII, Paragraph 5.0, of the Agreements constitutes state action that is being used to force nonmembers to support Local 99's political, ideological, or other non-chargeable activities, even over their objections.

60.   The government has no compelling state interest justifying a policy that denies nonmembers the right—except during a limited, narrow window period—to determine when or how to revoke his or her financial support for the political, ideological, or non-chargeable activities of a union.

61.   Article VIII, Paragraph 5.0, of the Agreements, on its face and/or as applied by Defendants, is unconstitutional as it permits Local 99 to force Plaintiffs and class members to financially support Local 99's political, ideological, and other non-chargeable activities against their will, and for the life of the Agreements. This provision violates the limited constitutional authorization for forced-unionism schemes under the First and Fourteenth Amendments, as set forth in controlling Supreme Court cases, which are limited to the payment of the costs of collective bargaining, contract administration, and grievance adjustment.

62.   Article VIII, Paragraph 5.0, of the Agreements on its face and/or as applied by Defendants, permits Local 99 to use monies extracted from Plaintiffs and class members for political, ideological, and other non-chargeable activities

SMITH & MYERS LLP
333 South Hope Street, 35th Floor
Los Angeles, California 90071
Tel: (213) 613-2380 Fax: (213) 613-2395

and is, therefore, unconstitutional. It creates a chilling effect and works a prior restraint upon Plaintiffs' and class members' exercise of their rights to free association, self-organization, assembly, and petition, and freedoms of speech, thought, and conscience, as guaranteed by the First and Fourteenth Amendments to the United States Constitution.

63.    As a direct result of Defendants' actions taken and threatened pursuant to the Agreements' "Union Security and Dues Deduction" article, Plaintiffs and class members:

a.  have been prevented from exercising their rights and privileges as citizens of the United States to resign their union memberships and/or to stop financially supporting political, ideological, and other non-chargeable activities of a private organization with which they no longer wish to associate or belong;

b.  have been deprived of their civil rights guaranteed to them under the statutes of the United States;

c.  have suffered monetary damages in the amount of dues or fees collected from them and spent on political, ideological, and other non-chargeable activities to which they object;

d.  are in imminent danger of being deprived of their rights guaranteed to them under the Constitution and statutes of the United States;

e.  are in imminent danger of suffering monetary, equitable, and other damages; and

SMITH & MYERS LLP
333 South Hope Street, 35th Floor
Los Angeles, California 90071
Tel: (213) 613-2380 Fax: (213) 613-2395

SMITH & MYERS LLP
333 South Hope Street, 35th Floor
Los Angeles, California 90071
Tel: (213) 613-2380 Fax: (213) 613-2395

1       f.     are in imminent danger of suffering irreparable harm, damage,

2  and injury that is inherent in the violation of First and Fourteenth Amendment

3

4  rights, for which there is no adequate remedy at law.

5      64.    If not enjoined by this Court, Defendants and/or their agents will

6  continue to effect the aforementioned deprivations and abridgements of Plaintiffs'

7

8  and class members' constitutional rights, thereby causing irreparable harm,

9  damage, and injury for which there is no adequate remedy at law.

10

## X.    COUNT III

11

*(Local 99's Violation of Plaintiffs' and Class Members' 42 U.S.C. §1983 and*
*Constitutional Rights by Refusing to Accept Membership Resignations and/or*
*Objections to Paying for Local 99's and Its Affiliates' Non-Chargeable Activities)*

12

13

14      65.    Plaintiffs incorporate and re-allege by reference all facts contained in

15

16  the foregoing paragraphs of this Complaint, as if fully set forth herein.

17      66.    The First and Fourteenth Amendments to the U.S. Constitution make

18  it illegal for a union or employer to force an employee to be a union member

19

20  and/or force a nonmember employee to pay for a union's political, ideological, or

21  other non-chargeable activities. *Abood*, 431 U.S. at 235-36; *Hudson*, 475 U.S. at

22  301-02. The rights and protections of the First Amendment to the United States

23

24  Constitution are incorporated against the States by the Fourteenth Amendment to

25  the United States Constitution.

26      67.    Local 99 violated Plaintiffs' and class members' First and Fourteenth

27  Amendment rights by denying said employees' written requests to resign their

28

union memberships and/or by denying their objections to paying for Local 99's political, ideological, and other non-chargeable activities. See Exhibit B.

68.     Local 99 also violated Plaintiffs' and class members' constitutional rights by not notifying the District of said employees' objecting agency fee status and not instructing the District to only deduct the reduced agency fee amount periodically from said employees' wages.

69.     As a direct result of Local 99's actual and threatened actions and inactions taken pursuant to the Agreements' "Union Security and Dues Deduction" article, Plaintiffs and class members:

a.  have been prevented from exercising their rights and privileges as citizens of the United States to resign their union membership and to stop financially supporting political, ideological, and other non-chargeable activities of a private organization with which they no longer wish to associate or belong;

b.  have been deprived of their civil rights guaranteed to them under the statutes of the United States;

c.  have suffered monetary damages in the amount of dues or fees collected from them and spent on political, ideological, and other non-chargeable activities to which they object;

d.  are in imminent danger of being deprived of their rights guaranteed to them under the Constitution and statutes of the United States;

SMITH & MYERS LLP
333 South Hope Street, 35th Floor
Los Angeles, California 90071
Tel: (213) 613-2380 Fax: (213) 613-2395

SMITH & MYERS LLP
333 South Hope Street, 35th Floor
Los Angeles, California 90071
Tel: (213) 613-2380 Fax: (213) 613-2395

e.  are in imminent danger of suffering monetary, equitable, and other damages; and

f.  are in imminent danger of suffering irreparable harm, damage, and injury that is inherent in the violation of First and Fourteenth Amendment rights, for which there is no adequate remedy at law.

70.   If not enjoined by this Court, Local 99 and/or its agents, and the District and Reilly as Rule 19(a) defendants, for purposes of this count, and/or their agents, will continue to effect the aforementioned deprivations and abridgements of Plaintiffs' and class members' constitutional and statutory rights, thereby causing irreparable harm, damage, and injury for which there is no adequate remedy at law.

## XI.  COUNT IV

*(Alternative Violations of 42 U.S.C. §1983 and the U.S. Constitution)*

71.   In the alternative, if there is a compelling state interest in requiring members of a labor organization to remain members until they reach a designated "window period," there is no compelling interest for the state to compel, via agreement or otherwise, those now compelled "members" to pay for a union's political, ideological, or other non-chargeable activities over their objections.

72.   Defendants have forced Plaintiffs and class members to both maintain an unwilling allegiance to Local 99 as a compelled "member" and be forced to pay for Local 99's political, ideological, and other non-chargeable activities against

their will. Such action by Defendants is a violation of Plaintiffs and class members'

First and Fourteenth Amendments rights to, as a compelled member, not be forced

to pay for the political, ideological, or other non-chargeable activities of a union.

73.    As a result of the Defendants' unlawful actions as described above,

Plaintiffs and class members as compelled members are:

a. in imminent danger of being deprived of their rights guaranteed to

them under the Constitution and statutes of the United States;

b. in imminent danger of suffering monetary, equitable, and other

damages; and

c. in imminent danger of suffering irreparable harm, damage, and injury

that is inherent in the violation of First and Fourteenth Amendment rights, for

which there is no adequate remedy at law.

74.    If not enjoined by this Court, Defendants and /or their agents will

continue to effect the aforementioned deprivations and abridgements of Plaintiffs'

and class members' constitutional and statutory rights, thereby causing irreparable

harm, damage, and injury for which there is no adequate remedy at law.

## XII.   COSTS AND ATTORNEYS' FEES

75.    Pursuant to 42 U.S.C. §1988, Plaintiffs seek an award of their costs

and reasonable attorneys' fees incurred in the litigation of this case.

///

///

SMITH & MYERS LLP
333 South Hope Street, 35th Floor
Los Angeles, California 90071
Tel: (213) 613-2380 Fax: (213) 613-2395

# XIII.   PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray that this Court:

a. **Preliminary injunction**: immediately issue a preliminary injunction ordering Defendants to cease the enforcement of Article VIII, Paragraph 5.0 of the Agreements and to cease collecting non-chargeable agency fees from any Plaintiff or class member, and apply same to any subsequent fee year for the duration of this matter;

b. **Class action**: enter an order, as soon as practicable, certifying this case as a class action and certifying the class as defined in this Complaint, certifying Douglas Kennedy, Eduardo Berumen, Griselda Moran, and Magi Sahagian as class representatives, and appointing Plaintiffs' counsel, Thomas Myers, Nathan J. McGrath, and Milton L. Chappell, as class counsel for the class.

c. **Declaratory judgment**: enter a declaratory judgment declaring that:

i. California's maintenance of membership provision authorization, codified in California Government Code §3504.1(i)(1), is unconstitutional on its face and as applied because it impermissibly abridges Plaintiffs' and class members' First and Fourteenth Amendment rights by allowing Defendants to force Plaintiffs and class members to maintain their membership in good standing, to include paying full union dues in spite of their objections;

ii. Article VIII, Paragraph 5.0 of the Agreements is unconstitutional on its face and as applied because it impermissibly abridges Plaintiffs' and class

SMITH & MYERS LLP
333 South Hope Street, 35th Floor
Los Angeles, California 90071
Tel: (213) 613-2380 Fax: (213) 613-2395

members' First and Fourteenth Amendment rights by allowing Defendants to prohibit Plaintiffs and class members from resigning their union membership and/or objecting at will to paying agency fees used to financially support Local 99's political, ideological, and other non-chargeable activities;

iii. Local 99 has violated Plaintiffs' and class members' First and Fourteenth Amendment rights by denying said employees' resignation of Local 99 union membership and/or request to pay for only Local 99's chargeable expenses;

iv. Local 99 has violated Plaintiffs' and class members' First and Fourteenth Amendment rights by continuing to instruct the District to deduct non-chargeable agency fees from Plaintiffs' and class members' wages, and by accepting and spending those fees;

d. **Permanent injunction**: enter a permanent injunction enjoining:

i.  Defendants from engaging in any activities this Court declares illegal;

ii. Defendants from enforcing or relying upon the provision of California Government Code §3540.1(i)(1) authorizing a maintenance of membership requirement for bargaining unit employees;

iii. Defendants from enforcing or relying upon Paragraph 5.0 of the Article VIII Union Security and Dues Deduction provision of the Agreements against employees objecting to paying non-chargeable union dues and/or fees;

SMITH & MYERS LLP
333 South Hope Street, 35th Floor
Los Angeles, California 90071
Tel: (213) 613-2380 Fax: (213) 613-2395

COMPLAINT – CLASS ACTION
30

SMITH & MYERS LLP
333 South Hope Street, 35th Floor
Los Angeles, California 90071
Tel: (213) 613-2380 Fax: (213) 613-2395

iv. Defendants from denying or refusing to accept any nonmember employee's request to pay only the chargeable fee amount no matter when said request is received;

v. Local 99 to notify the District that all Plaintiffs and class members are objecting agency fee payors and that the District is to deduct only the reduced agency fee amount from said employees' wages henceforth;

vi. Local 99 to issue a notice to all bargaining unit employees that Article VIII, Paragraph 5.0 of the Agreements is illegal and that all bargaining unit employees have the right to resign their union memberships and to object to paying anything but the reduced agency fee amount at any time during their employment;

vii. Local 99 from accepting any monies henceforth from Plaintiffs and/or class members that exceed the reduced agency fee amount,

viii. The District and Reilly, as Rule 19(a) defendants for purposes of this injunctive relief, from deducting henceforth any amount in excess of the reduced agency fee amount from Plaintiffs and/or class members; and

ix. Local 99 to refund with interest monies illegally seized from Plaintiffs and/or class members collected and received by Local 99 as a result of the illegal actions taken by Defendants.

e. **Damages**: enter a judgment awarding Plaintiffs and/or class members compensatory damages for the injuries sustained as a result of Defendant Local 99's unlawful interference with and deprivation of their constitutional and civil

rights including, but not limited to, the amount of agency fees improperly deducted from their wages, interest, nominal damages, and such other amounts as principles of justice and compensation warrant;

    f.  **Other relief:** grant Plaintiffs and/or class members such additional or different relief it deems just and proper;

    g.  **Costs and attorneys' fees**: enter a judgment awarding Plaintiffs their costs and reasonable attorneys' fees under 42 U.S.C. §1988; and

    h.  **Retain jurisdiction** over this action for a reasonable period of time after entering a final judgment to ensure Local 99 and the District comply with the Orders of this Court.

Dated this 9th day of October, 2014.

Respectfully submitted,

SMITH & MYERS LLP

By _____

Thomas Myers, Esq. (Cal. Bar No. 120674)
SMITH & MYERS LLP
333 South Hope Street, 35th Floor
Los Angeles, California 90071
Tel: (213) 613-2380; Fax: (213) 613-2395
E-mail: myers@smithmyerslaw.com

SMITH & MYERS LLP
333 South Hope Street, 35th Floor
Los Angeles, California 90071
Tel: (213) 613-2380 Fax: (213) 613-2395

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Nathan J. McGrath, Esq. (Pa. Bar No. 338845) (*pro hac vice to be applied for*)
Milton L. Chappell, Esq. (D.C. Bar No. 936153) (*pro hac vice to be applied for*)
c/o National Right to Work Legal
DEFENSE FOUNDATION, INC.
8001 Braddock Road, Suite 600
Springfield, Virginia 22151
Telephone: (703) 321-8510
Facsimile: (703) 321-9319
E-mails:   njm@nrtw.org; mlc@nrtw.org

*Attorneys for Plaintiffs and the Class They Seek to Represent*

SMITH & MYERS LLP
333 South Hope Street, 35th Floor
Los Angeles, California 90071
Tel: (213) 613-2380 Fax: (213) 613-2395

## SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 99
## UNITS B, C, F, G
## 2014-2017

This Memorandum of Understanding is made and entered into this 27th day of June, 2014 by and between the Board of Education of the Los Angeles Unified School District ("District") and the Service Employees International Union, Local 99 ("SEIU") for employees in Units B, C, F, and G.

Pursuant to the parties 2011-2014 Agreement, the District and SEIU, Local 99 have met and negotiated in good faith and have completed their negotiations for a successor collective bargaining agreement. The parties hereby agree as follows:

A.   All articles and provisions of the parties' 2011-2014 Agreement are incorporated as part of the parties' successor Agreements except (1) as modified by this Memorandum of Understanding, or (2) as required to make appropriate, non-substantive language corrections.

B.   For the 2014-2017 school years, the District and SEIU Local 99 agree to the following with respect to compensation:

**2014-2015**

Effective July 1, 2014, all SEIU bargaining unit members shall receive a 2% on-schedule wage increase applied to each step on the current base wage schedules. Thereafter, any salary steps that still remain less than $11.00 per hour shall receive a living wage adjustment to an hourly rate of $11.00.

**2015-2016**

Effective July 1, 2015, all SEIU bargaining unit members shall receive a 2% on-schedule wage increase applied to each step on the 2014-15 base wage schedules. Thereafter, any salary steps that still remain less than $13.00 per hour shall receive a living wage adjustment to an hourly rate of $13.00. The wage increases for those earning more than $13.00 are contingent upon District identification of increased revenues and/or reductions in operating expenses sufficient to fund the budgetary impacts of these wage increases. If there are indications that such resources may not be sufficient, the District shall promptly give notice to SEIU and immediately commence reopener negotiations for all bargaining unit members earning more than $13.00.

**2016-2017**

Effective July 1, 2016, all SEIU bargaining unit members shall receive a 2.5% on-schedule wage increase applied to each step on the 2015-16 base wage schedules. Thereafter, any salary steps that still remain less than $15.00 per hour shall receive a living wage adjustment to an hourly rate of $15.00. The wage increases for those earning more than $15.00 are contingent upon District identification of increased revenues and/or reductions in operating expenses sufficient to fund the budgetary impacts of these wage increases. If there are indications that such

resources may not be sufficient, the District shall promptly give notice to SEIU and immediately commence reopener negotiations for all bargaining unit members earning more than $15.00.

C.   For calendar years 2015-2017, the parties have agreed to reopen on Health and Welfare for applicable bargaining units, subject to coordinated bargaining on health and welfare.

D.   The parties' 2014-2017 Agreement shall be further modified as follows:

1.   **ACCESS TO HEALTH CARE BENEFITS** - The Union and the District shall agree to a Side Letter of Agreement that provides the procedures and protocols for the Union and the District to negotiate issues of health care for bargaining unit employees, beginning no later than September 30, 2014.

2.   **SEMI-MONTHLY PAY** - The Union agrees to the implementation of a semi-monthly pay system, effective July 2015. The District and Union will identify financial assistance for employees at no cost to the District. The District shall notify impacted employees in a timely way of this change and provide education materials to explain this change.

3.   **EVALUATION** - The Union and District agree to a year-long pilot of the Classified Growth and Development Cycle evaluation under the following conditions:

a.   The pilot shall include up to 500 unit members that fairly represent all bargaining units and classifications.
b.   All unit members taking part in the pilot shall do so on a voluntary basis only during work hours.
c.   Each bargaining unit member that completes the pilot program shall receive a one-time payment of $200.00, payable upon completion of the pilot program.
d.   Evaluations of bargaining unit members taking part in the pilot shall be non-punitive.
e.   The period for the pilot program shall be the 2014-2015 school year. During the pilot period, the Union shall be provided with regular materials and reports regarding the pilot program.
f.   Upon completion of the pilot program, an equal number of representatives of the Union and District shall meet and agree upon any changes to the program before its full implementation.

4.   **HOURS AND WORK YEARS** - The Union and the District agree to make concerted efforts to assess the feasibility of increasing the hours of existing bargaining unit members and reducing the percentage of part-time workers in each bargaining unit during the terms of the contract. As such, the Union and the District shall, before September 30, 2014, form and convene an Hours and Work Years Improvement Committee that shall be tasked with accomplishing the following:

a.   Determining ways to increase work hours for interested bargaining unit members by using natural attrition and other non-monetary cost processes;

    b.   Determining ways to increase the number of 8-hour positions for interested bargaining unit members by transferring work from private contractors to Local 99 bargaining units, if applicable;

    c.   Determining ways to restore work year bases, by using natural attrition, for existing unit members who experienced shortened work years;

    d.   Developing quarterly reports that allow for the monitoring of attrition and resolution of problems through the newly-formed Hours and Work Year Improvement Committee.

    e.   Determining attendance incentives to increase attendance.

The Hours and Work Years Improvement Committee shall be comprised of five (5) members appointed by the Union and five (5) members appointed by the District. The Committee shall meet bi-monthly and a minimum of six (6) times during each school year to ensure continual progress.

5.   **SAFETY AND MATERIALS** - The Union and the District agree to establish a joint Safety and Materials Committee to resolve health and safety concerns of unit members. The Safety and Materials Committee shall be comprised of five (5) members appointed by the Union and five (5) members appointed by the District. The Committee shall meet monthly and a minimum of nine (9) times during the school year to ensure full completion of its charge. During the initial meetings of the Committee, the following matters shall be discussed:

    a.   Issues raised by unit members re: adequate break rooms and restrooms in transportation yards;

    b.   Issues raised by unit members re: bullying by administrators and others.

6.   **TRAINING AND CAREER PATH** - The Union and the District shall establish a joint Training and Career Path Advisory Committee to increase unit member opportunities for career advancement and to recommend training. The Committee shall be comprised of five (5) members appointed by the Union and five (5) members appointed by the District and shall meet quarterly. Joint recommendations from the Committee shall be forwarded to the Superintendent and the Personnel Commission for consideration.

7.   **OASIS** - The Office of Data and Accountability will develop a report on the progress of the program and its identified goals. The Union and the District agree to reopen discussions on the subject of OASIS on or after January 1, 2016.

8.   **VACATION** – The District agrees to work towards reducing the amount of blackout days. Additionally, the District agrees to discuss the subject of vacation blackouts and waivers within the Hours and Work Years Committee referenced in #4 above.

9.   **ASSIGNMENTS** - The District agrees to review the issues raised by SEIU below with respect to assignments within the Hours and Work Years Improvement Committee including:

    a.   Language changes in the Unit B and Unit C contracts to increase the number of full-time positions by District seniority in each unit in a serious and measurable way by the end of the contract term. For Unit B, seniority lists shall be developed by the parties during the

2014-2015 contract year for all classifications in the same manner as "family" classification groups are found in Article 11, Section 7.4.

b. The criteria for all Unit B position reductions at work sites and for the filling of open positions, shall be by seniority and shall use the same process for establishing posted seniority lists that are found Unit F contract, Article X, Section 2.1 and Section 2.2.

The Union and District agree to memorialize a process to notify and move restricted employees into regular status.

The District and the Union agree to discuss assignments related to Bus and Truck Operations Bidding Procedures within the Hours and Work Years Improvement Committee with the understanding that no current rights or privileges shall be reduced or limited. .

10. **GRIEVANCE PROCEDURE** - Strike language in each contract requiring individual signatures for all impacted members and add the following language in the grievance procedure for each bargaining unit to allow for the filing of class action or group grievances:

"Grievance as defined under this article may be filed by the affected employee or by the Union on its own behalf or on behalf of an individual employee or group of employees where the claims are similar. On filing a grievance on behalf of a group, however, the Union must specify the names of the employees on whose behalf the grievance is being filed, and indicate the nature and scope of the claim."

11. **UNION RIGHTS** -- For the 2014-2015 year, SEIU Local 99 will be provided with a location in close proximity to *New Employee Orientation* where they can speak to members prior to the beginning of *New Employee Orientation*.  Granting of this right shall not interfere with the employee being on time to *New Employee Orientation*.

12. **TERM** - The parties agree to a three (3) year term covering July 1, 2014-June 30, 2017.

The above is subject to ratification by the SEIU Local 99 membership and to final approval by the LAUSD Board of Education.

Date of agreement: ___6/27/14___

Los Angeles Unified School District

By: _____
Vivian Ekchian
Chief Labor Negotiator

Service Employees International Union, Local 99

By: _____
Courtni Pugh
Executive Director

Adopted and approved by the Board of Education on _____, 2014.


By: _____

     Richard Vladovic, Ed.D.
     President

# 2011-2014

# COLLECTIVE BARGAINING AGREEMENT

# UNIT C
# (OPERATIONS – SUPPORT SERVICES)

## LOS ANGELES UNIFIED SCHOOL DISTRICT
## AND
## SERVICE EMPLOYEES INTERNATIONAL UNION
## LOCAL 99

## TABLE OF CONTENTS

| <u>ARTICLE</u> | | <u>PAGE</u> |
|---|---|---|
| | AGREEMENT | 1 |
| I. | RECOGNITION | 1 |
| II. | SEPARABILITY AND SAVINGS | 4 |
| III. | DISTRICT RIGHTS | 5 |
| IV. | UNION RIGHTS | 8 |
| V. | GRIEVANCE PROCEDURE | 11 |
| VI. | WORK STOPPAGE | 17 |
| VII. | NON-DISCRIMINATION | 18 |
| VIII. | UNION SECURITY AND DUES DEDUCTION | 19 |
| IX. | HOURS AND OVERTIME | 22 |
| X. | EVALUATION PROCEDURES | 26 |
| XI. | TRANSFER PROCEDURES | 30 |
| XII. | BUS AND TRUCK OPERATIONS BIDDING PROCEDURES | 33 |
| XIII. | LEAVES OF ABSENCE | 41 |
| XIV. | WAGES AND SALARIES, PAY ALLOWANCES, DIFFERENTIALS AND SPECIAL SALARY PRACTICES | 56 |
| XV. | HEALTH AND WELFARE | 65 |
| XVI. | HOLIDAYS | 77 |
| XVII. | VACATION | 79 |
| XVIII. | SAFETY CONDITIONS | 85 |
| XIX. | TOOL REPLACEMENT | 87 |
| XX. | TUITION REIMBURSEMENT | 88 |

40

# TABLE OF CONTENTS

| ARTICLE | | PAGE |
|---|---|---|
| XXI. | RECLASSIFICATION PROCEDURE | 90 |
| XXII. | TRAINING | 91 |
| XXIII. | ENTIRE AGREEMENT | 92 |
| XXIV. | TERM OF AGREEMENT | 93 |
| APPENDIX A | SALARIES | 94 |
| APPENDIX B | BOARD RULE 1990 | 97 |
| APPENDIX C | BIDDING PROCEDURES – AUTOMOTIVE MAINTENANCE SECTION | 100 |
| APPENDIX D | SUBSTITUTE ADDENDUM | 104 |
| APPENDIX E | 2012-2014 HEALTH BENEFIT AGREEMENT | 107 |

## AGREEMENT

THIS AGREEMENT is made and entered into this 30th day of July, 2012, by and between the Board of Education of the Los Angeles Unified School District, which together with its administrative staff and representatives will be referred to in this Agreement as the "District" and Los Angeles City and County School Employees Union, Local 99, which together with its officers and representatives will be referred to in this Agreement as "Union."

## ARTICLE I

## RECOGNITION

   1.0   The Unit: Pursuant to applicable California statutes, regulations, and the Consent Election Agreement dated February 15, 1978, in P.E.R.B. Case No. LA-R-1, the Union has been certified as the exclusive representative of a bargaining unit comprised of the following employees of the District.

   1.1   Included:  All regular employees in probationary and permanent status, including restricted and part-time employees, employed in the following classes:

| | | | |
|---|---|---|---|
| 4078 | Air Filter Technician II | 4377 | Cafeteria Helper |
| 4526 | Animal Caretaker | 4391 | Food Service Worker |
| 3319 | Appliance Repair Technician | 4394 | Cafeteria Worker I (Mentor Worker) |
| 8713 | Apprentice Automotive Mechanic (Bus Truck) | 4388 | Food Service Worker II (Driving) |
| | | 4387 | Cafeteria Worker III |
| 4193 | Assistant Gardener (Restricted) | 3541 | Computer Technologist I |
| 4798 | Assistant Photocopy Technician | 3545 | Computer Technologist II |
| 5771 | Automotive Body Mechanic | 2128 | Digital Library Assistant |
| 5775 | Automotive Mechanic | 5881 | Driver-Clerk |
| 5776 | Automotive Mechanic (Bus-Truck) | 3544 | Enterprise Server Analyst |
| | | 5249 | Fleets Parts Storekeeper |
| 5130 | Automotive Parts Purchaser | 4399 | Food Production Assistant |
| 4779 | Bindery Assistant | 4398 | Food Production Worker |
| 3571 | Brass and Percussion Instrument Technician | 5778 | Forklift Mechanic |
| | | 5217 | Forklift Operator |
| 4041 | Building Engineer | 5781 | Garage Assistant |
| 4075 | Building and Grounds Worker | 5786 | Garage Attendant |
| 4068 | Building and Grounds Worker (Restricted/Disabled) | 4186 | Gardener |
| | | 3528 | Graphic Arts Machinist |
| 5788 | Bus Park Attendant | 5826 | Heavy Bus Driver |
| 5864 | Transportation Routing Assistant | 5831 | Heavy Truck Driver |

07-30-2012
F: DATA: CONTRACT UNIT C 2011-2014: ART I

42

## Article I – Recognition

| | | | |
|---|---|---|---|
| 5858 | Heavy Truck Driver Assistant | 4098 | School Facilities Attendant (Female) |
| 4043 | High Pressure Engineer | 4099 | School Facilities Attendant (Male) |
| 4081 | Housekeeper | 5766 | Senior Automotive Mechanic |
| 4617 | Interpreting Equipment Technician | | (Bus-Truck) |
| 3591 | IT Field Services Technician I | 4039 | Senior Building Engineer |
| 3539 | IT Field Services Technician II | 4395 | Senior Food Service Worker |
| 3593 | IT LAN Technician | 4332 | Senior Food Production Assistant |
| 3863 | IT Solution Technician | 3592 | Senior IT Field Services Technician |
| 5861 | Light Bus Driver | 3594 | Senior IT LAN Technician |
| 5866 | Light Truck Driver | 3569 | Senior Musical Instrument |
| 4362 | Manufacturing Kitchen Assistant | | Repair Technician |
| 4390 | Manufacturing Kitchen Worker | 3589 | Senior Network Technician |
| 4339 | Meat Shop Worker | 4761 | Senior Offset Machine Operator |
| 5206 | Medical Supply Clerk | 4765 | Senior Offset Press Operator |
| 5847 | Medium Truck Driver | 5231 | Senior Toolkeeper |
| 2210 | Microcomputer Support Assistant | 3566 | Stage Rigger |
| 5185 | Military Property Custodian and | 5247 | Stock Clerk |
| | Logistician | 5255 | Stock Clerk (Braille) |
| 3764 | Musical Instrument Repair Assistant | 5265 | Stock Clerk (Computer Repair) |
| 4875 | Network Operations Center | 5274 | Stock Clerk (Infant and PreSchool) |
| | Engineer | 5267 | Stock Clerk (Music) |
| 3590 | Network Technician | 4771 | Stock Cutter and Finisher |
| 4766 | Offset Machine Operator | 5260 | Stock Worker |
| 4767 | Offset Press Operator | 5259 | Stock Worker (Restricted/Disabled) |
| 4335 | Packing Services Technician | 3581 | Stringed Instrument Technician |
| 4158 | Pest Management Technician | 5285 | Toolkeeper |
| 4797 | Photocopy Technician | 5281 | Toolkeeper (Restricted/Disabled) |
| 3586 | Piano Technician | 3368 | Tractor Mower Operator |
| 4057 | Pool Custodian | 5727 | Transportation Router |
| 5780 | Power Equipment Mechanic | 4147 | Tree Surgeon |
| 5605 | Program Associate F | 5871 | Truck Driver Helper |
| 4367 | Range Cook | 3538 | WAN Specialist I |
| 4796 | Reprographic Assistant | 4885 | WAN Specialist II |
| 4097 | School Facilities Attendant | 4051 | Window/Wall Washer |
| | (Restricted) | 3576 | Woodwind Instrument Technician |

    1.2    Excluded:    All other personnel designated as management, supervisory, or confidential within the meaning of Government Code Section 3540.I and those classes and positions excluded in the Consent Election Agreement dated February 15, 1978, in P.E.R.B. Case No. LA-R-1.

    2.0    Changes to the Unit:  The parties agree that this represents the appropriate unit. The unit may be revised only by mutual agreement or by a Public Employment Relations Board unit clarification decision, but it is agreed that neither party

**Article I Recognition**

may file for a unit clarification proceeding involving this unit except when the District creates new classifications or when the Union contends that certain classifications should be accreted to the unit.  Disputes over unit composition and alleged violations of this Article are not subject to the grievance and arbitration procedures of this Agreement.

        3.0     <u>"Employee" Defined</u>: Unless the context clearly indicates otherwise, the terms "employee" or "employees" will normally be used in this Agreement to indicate persons who are included within the above unit, and the term "personnel" will normally be used in a broader sense to include employees as defined above plus all other persons utilized by the District to provide services.

        4.0     Employees with more than one job assignment who function for a majority of the work period in any of the classifications listed in Section 1.1 of this Article shall be considered in the unit.  Should an employee's job involve an equal number of hours in different assignments he/she shall be considered as included in the unit only if he/she has functioned in one of the foregoing classifications for the longest period of time based upon his/her date of regular assignment.

## ARTICLE VIII

## UNION SECURITY AND DUES DEDUCTION

1.0 <u>Voluntary Authorization</u>:   The District shall deduct Union membership dues for each pay period worked in the amount specified by the Union from the salary of each employee who has submitted a written authorization.

2.0 <u>Exclusive to Union</u>: Payroll deductions for membership dues from employees shall be exclusive on behalf of the Union and no membership dues deductions are to be made on behalf of any other employee organization as defined in Government Code Section 3540.1(d).

3.0 <u>Remittance to Union</u>: A deposit approximating the amount of dues so deducted shall be remitted to the Union on payday, and the reconciled amount will be supplied to the Union within thirty (30) days after the deductions are made, together with a list of affected employees.

4.0 <u>Dues Deductions</u>: In instances where a dues deduction is not taken from an employee who has a valid authorization form on file, the missed deduction(s) will be taken from a subsequent salary payment and remitted to the Union.

5.0 A dues deduction may only be revoked by an employee in writing during the thirty (30) day period commencing ninety (90) days before the expiration of the Agreement and/or upon expiration of the Agreement.   The dues deduction shall automatically terminate if an employee terminates employment or otherwise ceases to be a member of the bargaining unit.

6.0 <u>Agency Fee Obligation</u>:   Those employees who are currently members of the Union, and who have a dues deduction in effect, shall continue to have such dues deducted from their salary payments. Commencing within thirty (30) days of a final certification of agency fee election results or within thirty (30) days of an employee's initial employment, whichever is later, and continuing throughout the term of this Agreement, each employee (as defined in Article I of this Agreement) is required as a condition of continued employment either:   (a) to be a member in good standing of the Union, or (b) to satisfy the agency fee financial obligations set forth in Section 6.1 below, unless qualified for religious exemption as set forth in Section 6.2 below.

6.1 Unless the employee has (a) voluntarily submitted to the District an effective dues deduction request, or (b) individually made direct financial arrangements satisfactory to the Union as evidenced by notice of same by the Union to the District, or (c) qualified for exemption based upon religious grounds as provided in Section 6.2 below, the District shall process a mandatory agency fee payroll deduction in the appropriate amount, and forward that amount to the Union. The amount of agency fee to be charged shall be determined by the Union subject to applicable law; it shall therefore be an amount not to exceed the normal periodic membership dues, initiation fee and general assessments

07-30-2012
F: DATA: CONTRACT UNIT C 2011-2014: ART VIII

## Article VIII - Union Security and Dues Deduction

applicable to Union members. As to non-members who object to the Union spending their agency fee on matters unrelated to collective bargaining and contract administration, the amount of agency fee charged shall not reflect expenditures which the courts or PERB have determined to be non-chargeable, including political contributions to candidates and parties, members-only benefits, charitable contributions and ideological expenditures and, to the extent provided by law, shall not reflect expenditures for certain aspects of lobbying, ballot measures, publications, organizing and litigation. The Union shall comply with applicable law regarding disclosure and allocation of its expenses, notice to employees of their right to object, provision for agency fee payers to challenge the Union's determinations of amounts chargeable to the objecting non-members, and appropriate escrow provisions to hold contested amounts while the challenges are underway. The foregoing description of permissible agency fee charges and related procedures is included herein for informational purposes as a statement of applicable law, and is not intended to change applicable law or to provide any contractual terms or enforcement procedures under this Agreement. The District will promptly remit to the Union all monies deducted, accompanied by a list of employees for whom such deductions have been made.

6.2     Religious Exemption from Agency Fee Obligations:

a.      Any employee who is a member of a religious body whose traditional tenets or teachings include objections to joining or financially supporting employee organizations shall not be required to meet the above agency fee obligations, but shall pay in lieu thereof (by means of mandatory payroll deduction) an amount equal to the agency fee, to a nonreligious, non-labor charitable organization exempt from taxation under Section 501(c) (3) of the Internal Revenue Code, as designated by the employee. Board of Education approved examples of such organizations are:

> Brotherhood Crusade
> United Negro College Fund
> United Way

b.      To qualify for the religious exemption, the employee must provide to the District, with a copy to the Union, a written statement of objection, along with verifiable evidence of membership in a religious body as described in a. above.

c.      An employee utilizing this religious exemption status who requests the Union to utilize the grievance/arbitration provisions on the employee's behalf, shall be subject to charges by the Union for the reasonable cost of using such procedures.

6.3     Implementation Dates:   Any of the above-described payment obligations applicable to employees shall be processed by the District with the payroll immediately following the effective date of the payment requirement, provided that the

46

**Article VIII - Union Security and Dues Deduction**

information is on file with the Payroll Branch by the deadline for filing time reports.

      6.4    Indemnity/Hold-Harmless:  The Union agrees to indemnify and hold the District harmless against any and all liabilities (including reasonable and necessary costs of litigation) arising from any and all claims, demands, suits, or other actions relating to the District's compliance or attempted compliance with either this Article or the requests of the Union pursuant to this Article, or relating to the conduct of the Union in administering this Article. The Union shall have the right to determine and decide all matters relating to settlement and conduct of litigation with respect to this Article.  In no case shall District funds be involved in any remedy relating to this Article.  Any underpayments to the Union resulting from the District's failure to make a required deduction shall be remedied by additional deductions from the affected employee(s).

Any overpayments to the Union resulting from excessive deductions shall be remedied either by refund from the Union to the affected employee(s) or by a credit against future payments by the affected employee(s).

      6.5    The District will furnish any information needed by the Union to fulfill the provisions of this Article.

      6.6    The District shall deduct agency fees for each pay period worked.

3.    Recommendations:  Within six (6) months from the establishment of the subcommittee referenced herein, a written report containing the alternatives discussed together with any specific recommendations shall be submitted to the HBC and the District.  Any such recommendation may be implemented upon mutual agreement of the HBC unions and the District.

## IX.    IMPACTS OF LEGISLATION

The parties shall, upon the request of either the District or the unions (collectively), meet and negotiate over the impact (if any) of newly adopted state or national legislation or regulations upon the Health Plans or this Agreement, including but not limited to any legislation or implementing regulations arising under the Health Care Reform and Affordable Care Act of 2010, or Court decisions affecting such legislation or regulations, including but not limited to reopening of current terms of this Agreement to respond to such matters.

## X.    TERM OF AGREEMENT

This Agreement shall, as provided in Section IV above, cover the Health Plan years 2012, 2013 and 2014, and expire December 31, 2014, unless the contingency stated in Section IV-5 occurs, in which case this Agreement shall automatically be extended to cover 2015 and thereby expire December 31, 2015.

## XI.    STATUS QUO UPON EXPIRATION OF AGREEMENT

In the absence of a subsequent negotiated agreement, the District's per-enrollee contribution levels of the most recent Plan year shall remain in effect, and the District may unilaterally implement premium contributions from current employees through automatic payroll deduction and/or from retirees through direct payment or other means to the extent necessary to contain health and welfare costs within the District's contribution levels, subject to upward adjustment due to existing ending reserve fund balances (if any), and/or to downward adjustment to reflect prior year expenditures which exceeded the then-current contribution obligation (if any).

IT IS SO AGREED:


_____          _____
On Behalf of Los Angeles Unified School District          Date          7/24/12


_____          _____
On Behalf of Health & Welfare Coordinated Bargaining Team          Date          7/9/12


115

48

_____   _____7/9/12_____
On Behalf of Associated Administrators Los Angeles          Date

_____   _____07/09/2012_____
On Behalf of California School Employees Association          Date

_____   _____07/09/2012_____
On Behalf of Los Angeles/Orange Counties Building          Date
and Construction Trades Council

_____   _____7/09/12_____
On Behalf of Los Angeles School Police Association          Date

_____   _____07-30-12_____
On Behalf of Los Angeles School Police Sergeants          Date
and Lieutenants Association

_____   _____7-11-12_____
On Behalf of SEIU, Local 99          Date

_____   _____7/9/12_____
On Behalf of Teamsters Local 572          Date

_____   _____7-9-12_____
On Behalf of United Teachers Los Angeles          Date

Adopted and approved by the Board of Education on: ___9-16-12___
                                                    Date

By: _____
   Monica Garcia, Board President

116



**LOCAL 99**

EDUCATION WORKERS UNITED

**SEIU**

Barbara Torres
*President*

Sandra Lee
*Vice President*

Maggie Johnson
*Treasurer*

Gamaliel Andrade
*Secretary*

Scott Washburn
*Interim Executive Director*

**Executive Board**

*Child Care*
Marta Gilda Delgado
Tonia McMillian
Amparo Moreno
Annie Thomas

*County Office of Education*
Ramon Capiral

*Early Education*
Claudia Iraheta
Jannette Morales

*Higher Education*
Lori L. Annala
Daniel B. Casey
Carlos H. Diaz
Christzann Ozan

*Large Public K-12*
Maggie Estell
Joseph Holguin
Edward A. Nwadibia

*Small Public K-12*
Jacqueline Brown
Keryl Cartee-McNeely
Adrian Cleveland
Michael Robertson

*Retired Members*
Virginia Valverde

September 10, 2014

DOUGLAS KENNEDY union#50783
12656 GARBER ST
PACOIMA, CA 91331

RE: **Reduced Fair Share Request**

Dear DOUGLAS,

We declined your request to pay the reduced fair share fee. The current collective bargaining agreement includes a "maintenance of membership" provision, pursuant to which members who authorize payroll deduction of dues can only revoke that authorization during a 30-day window period that commences 90 days prior to the agreement's expiration. The expiration date of the current agreement is June 30, 2017. Thus, your request to revoke that authorization must be submitted between March 31 and April 30, 2017. Also, under state law you may revoke that authorization at anytime after expiration of the current agreement where no new maintenance of membership provision is in effect, or where a new agreement containing a maintenance of membership provision is in effect, you may revoke that authorization during the 30 days following expiration or termination of the current agreement.

If you submit a revocation request at the appropriate time, we will honor it. We understand that you currently do not wish to be a member of Local 99, and, therefore, we will not enforce any rules or duties of membership – other than the financial obligation you voluntarily assumed – against you. Nor will we seek to affect your employment.

Sincerely,

*Cecilia Barnes*

Cecilia Barnes
Membership Strength Director

50



**LOCAL 99**
EDUCATION WORKERS UNITED
**SEIU**

**Edward Reed**
*President*

**Barbara Torres**
*Vice President*

**Maggie Johnson**
*Treasurer*

**Keryl Cartee-McNeely**
*Secretary*

**Bill A. Lloyd**
*Executive Director*

**}Executive Board**

*County Office of Education*

**Ramon Capiral**
**LaTrIe McNally**

*Early Education*

**LaRonda Davison**
**Gayle Williams**

*Higher Education*

**Lori L. Renala**
**James Bradley**
**Daniel B. Casey**
**Carlos H. Diaz**

*Large Public K-12*

**Maggie Estell**
**Joseph Holguin**
**Edward A. Nwadibia**

*Small Public K-12*

**Vilma Carrizales**
**Ron Cloutier**
**Samuel Conner**
**Michael Robertson**

October 12, 2012

EDUARDO BERUMEN union#3663
16620 MOORBROOK AVE
CERRITOS, CA 90703-1407

RE: Reduced Fair Share Request

Dear EDUARDO,

We declined your request to pay the reduced fair share fee payable by non-members. The current collective bargaining agreement includes a "maintenance of membership" provision, pursuant to which members who authorize payroll deduction of dues can only revoke that authorization during a 30-day window period that commences 90 days prior to the agreement's expiration. The expiration date of the current agreement is June 30, 2014. Thus, your request to revoke that authorization must be submitted between March 31 and April 30, 2014. Also, under state law you may revoke that authorization at anytime after expiration of the current agreement where no new maintenance of membership provision is in effect, or where a new agreement containing a maintenance of membership provision is in effect, you may revoke that authorization during the 30 days following expiration or termination of the current agreement.

If you submit a revocation request at the appropriate time, we will honor it. We understand that you currently do not wish to be a member of Local 99, and, therefore, we will not enforce any rules or duties of membership – other than the financial obligation you voluntarily assumed – against you. Nor will we seek to affect your employment. But in light of the fact that your financial obligation continues for now, we urge you to take advantage of your membership by participating in the activities of Local 99. Perhaps by doing so, you will change your mind and choose not to submit a revocation of your dues deduction authorization when the proper time comes.

As a full-fledged dues paying Member, you are entitled to all of the rights and privileges of membership. These rights and privileges include the right to participate in membership meetings, vote on contracts and for your Local 99 Executive Board Officers, and run for office yourself. Other benefits of being a Member are you have access to free CPR & First Aid classes and your new Local 99 Membership card doubles as both your Membership ID card and as a valuable savings card which gives you access to discounts of up to 50% off at over 200,000 locations worldwide. You are also eligible to participate in the Union Plus program (www.unionplus.org) which includes discounts on money & credit, family, house & home, health & wellness, and travel & vacation services. Also, SEIU Local 99 members can purchase tickets to local theme parks and attractions at reduced rates via the Local 99 front desk. Full-fledged members help make the entire union stronger so we can all win stronger contracts.

Sincerely,

*Cecilia Barnes*

Cecilia Barnes
Membership Supervisor



**LOCAL 99**

EDUCATION WORKERS UNITED

**SEIU**

---

**Edward Reed**
*President*

**Barbara Torres**
*Vice President*

**Maggie Johnson**
*Treasurer*

**Gama Andrade**
*Secretary*

**Courtni Pugh**
*Executive Director*

■ **Executive Board**

*Child Care*
Marta Gilda Delgado
Tonia McMillian
Amparo Moreno
Annie Thomas

*County Office of Education*
Ramon Capiral

*Early Education*
Jannette Morales

*Higher Education*
Lori L. Annala
Daniel B. Casey
Carlos H. Diaz

*Large Public K-12*
Maggie Estell
Joseph Holguin
Edward A. Nwadibia

*Small Public K-12*
Jacqueline Brown
Keryl Cartee-McNeely
Adrian Cleveland
Michael Robertson

---

November 20, 2013

GRISELDA MORAN union#138506
458 S. HARTFORD AVE., #211
LOS ANGELES, CA 90017

RE: Reduced Fair Share Request

Dear GRISELDA,

We declined your request to pay the reduced fair share fee payable by non-members. The current collective bargaining agreement includes a "maintenance of membership" provision, pursuant to which members who authorize payroll deduction of dues can only revoke that authorization during a 30-day window period that commences 90 days prior to the agreement's expiration. The expiration date of the current agreement is June 30, 2014. Thus, your request to revoke that authorization must be submitted between March 31 and April 30, 2014. Also, under state law you may revoke that authorization at anytime after expiration of the current agreement where no new maintenance of membership provision is in effect, or where a new agreement containing a maintenance of membership provision is in effect, you may revoke that authorization during the 30 days following expiration or termination of the current agreement.

If you submit a revocation request at the appropriate time, we will honor it. We understand that you currently do not wish to be a member of Local 99, and, therefore, we will not enforce any rules or duties of membership – other than the financial obligation you voluntarily assumed – against you. Nor will we seek to affect your employment. But in light of the fact that your financial obligation continues for now, we urge you to take advantage of your membership by participating in the activities of Local 99. Perhaps by doing so, you will change your mind and choose not to submit a revocation of your dues deduction authorization when the proper time comes.

As a full-fledged dues paying Member, you are entitled to all of the rights and privileges of membership. These rights and privileges include the right to participate in membership meetings, vote on contracts and for your Local 99 Executive Board Officers, and run for office yourself. Other benefits of being a Member are you have access to free CPR & First Aid classes and your new Local 99 Membership card doubles as both your Membership ID card and as a valuable savings card which gives you access to discounts of up to 50% off at over 200,000 locations worldwide. You are also eligible to participate in the Union Plus program (www.unionplus.org) which includes discounts on money & credit, family, house & home, health & wellness, and travel & vacation services. Also, SEIU Local 99 members can purchase tickets to local theme parks and attractions at reduced rates via the Local 99 front desk. Full-fledged members help make the entire union stronger so we can all win stronger contracts.

Sincerely,

*Cecilia Barnes*

Cecilia Barnes
Membership Strength Director

---

52



**LOCAL 99**
SEIU
EDUCATION WORKERS UNITED

**Edward Reed**
*President*

**Barbara Torres**
*Vice President*

**Maggie Johnson**
*Treasurer*

**Gama Andrade**
*Secretary*

**Courtni Pugh**
*Executive Director*

**Executive Board**

*Child Care*
**Marta Gilda Delgado**
**Tonia McMillian**
**Amparo Moreno**
**Annie Thomas**

*County Office of Education*
**Ramon Capiral**

*Early Education*
**Jannette Morales**

*Higher Education*
**Lori L. Annala**
**Daniel B. Casey**
**Carlos H. Diaz**

*Large Public K-12*
**Maggie Estell**
**Joseph Holguin**
**Edward A. Nwadibia**

*Small Public K-12*
**Jacqueline Brown**
**Keryl Cartee-McNeely**
**Adrian Cleveland**
**Michael Robertson**

December 20, 2013

MAGI SAHAGIAN union#52346
17823 WELBY WAY
RESEDA, CA 91335

RE: **Reduced Fair Share Request**

Dear MAGI,

We declined your request to pay the reduced fair share fee payable by non-members. The current collective bargaining agreement includes a "maintenance of membership" provision, pursuant to which members who authorize payroll deduction of dues can only revoke that authorization during a 30-day window period that commences 90 days prior to the agreement's expiration. The expiration date of the current agreement is June 30, 2014. Thus, your request to revoke that authorization must be submitted between March 31 and April 30, 2014. Also, under state law you may revoke that authorization at anytime after expiration of the current agreement where no new maintenance of membership provision is in effect, or where a new agreement containing a maintenance of membership provision is in effect, you may revoke that authorization during the 30 days following expiration or termination of the current agreement.

If you submit a revocation request at the appropriate time, we will honor it. We understand that you currently do not wish to be a member of Local 99, and, therefore, we will not enforce any rules or duties of membership – other than the financial obligation you voluntarily assumed – against you. Nor will we seek to affect your employment. But in light of the fact that your financial obligation continues for now, we urge you to take advantage of your membership by participating in the activities of Local 99. Perhaps by doing so, you will change your mind and choose not to submit a revocation of your dues deduction authorization when the proper time comes.

As a full-fledged dues paying Member, you are entitled to all of the rights and privileges of membership. These rights and privileges include the right to participate in membership meetings, vote on contracts and for your Local 99 Executive Board Officers, and run for office yourself. Other benefits of being a Member are you have access to free CPR & First Aid classes and your new Local 99 Membership card doubles as both your Membership ID card and as a valuable savings card which gives you access to discounts of up to 50% off at over 200,000 locations worldwide. You are also eligible to participate in the Union Plus program (www.unionplus.org) which includes discounts on money & credit, family, house & home, health & wellness, and travel & vacation services. Also, SEIU Local 99 members can purchase tickets to local theme parks and attractions at reduced rates via the Local 99 front desk. Full-fledged members help make the entire union stronger so we can all win stronger contracts.

Sincerely,

*Cecilia Barnes*

Cecilia Barnes
Membership Strength Director